IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| HARRY CULLIPHER, An Incapacitated | § | |
| Person by his Guardian of the Person, | § | |
| NANCY GREATHOUSE AND NANCY | § | |
| GREATHOUSE, Individually | § | |
|    Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 1:20-cv-00030 |
| | § | |
| ESTRELLA OAKS REHABILITATION | § | |
| CARE CENTER, THI, INC A | § | |
| DELAWARE LIMTED | § | |
| DEFENDANTS | § | |

### PLAINTIFFS FIRST ORIGINAL COMPLAINT AND JURY DEMAND

**NOW COMES** HARRY CULLIPHER by his Guardian of The Person, NANCY GREATHOUSE, and NANCY GREATHOUSE, Individually (collectively termed Plaintiffs herein), and brings this their *"Plaintiffs Original Complaint,"* against ESTRELLA OAKS REHABILITATION & CARE CENTER and THI, LLC ("Defendants", "EO", or "Estella Oaks" hereafter) and would respectfully show this Court the following:

### I. BRIEF INTRODUCTION TO THE CASE

1. Plaintiff, Harry Cullipher is currently a 78-year-old man who is suffering from Dementia and other health concerns.  His dementia has rendered him cognitively impaired and made him incapacitated in all senses of the word. He is currently under a Guardianship and as such, he is considered a person with a disability as contemplated by the Section 504 of the *Rehabilitation Act of 1973* ("Rehab Act"), 29 U.S.C. §794.  Treatment providers, like Defendant Estrella Oaks have a duty under the common law and state law

to provide necessary treatments.  In addition, this Defendant has a duty under federal law to accommodate Mr. Cullipher's disabilities commensurate with his unique and individualized needs. As will be more fully described below, the Defendant failed as to all these duties.

2.  As such, Plaintiffs file this suit against Defendant for violations of Mr. Cullipher's civil rights pursuant to the Rehabilitation Act, state law claims pursuant to Chapter 74 of the Texas Civil Practices & Remedies Code; Chapter 17 of the Texas Business & Commerce Code commonly known as Texas Deceptive Trade Practices Act, as well various common law claims.  For such causes of action, Plaintiffs seek damages, compensation and attorney's fees and costs for the injuries Mr. Cullipher experienced.

## II. <u>JURISDICTION</u>

3.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the laws of the United States.

4.  Furthermore, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

5.  Last, this Court has jurisdiction to award attorney's fees and costs to the Plaintiff under the Rehabilitation Act, pursuant to 29 U.S.C. §794a pursuant to 42 U.S.C. §2000d et seq., and the Texas Deceptive Trade Practices Act.

## III.  <u>VENUE</u>

6.  Under 28 U.S.C. §1391, venue is proper before this Court because the Defendant operates a business in the Western District of Texas, Austin Division.

## IV.   PARTIES

7.  As noted above, Mr. Cullipher is a senior citizen and an incapacitated individual and is therefore considered to have a disability as contemplated by the Rehabilitation Act.

8.  Nancy Greathouse is the common law wife of Harry Cullipher and is the acting Guardian of his person with the power to make medical decisions on his behalf.

9.  Estrella Oaks Rehabilitation and Care Center is a corporation chartered by the State of Texas. It is qualified to do business in the State of Texas and in Williamson County, Texas. Plaintiffs reasonably believe that Defendants are represented by Arlene Wiese who, Plaintiffs believe will accept and/or waive service.

10. THI Of Texas, LLC is a limited liability company registered in the state of Delaware and, the one hundred percent owner of Estrella Oaks Rehabilitation and care center.

11. This Defendants are sued in all of its assumed, common or business names and notice is hereby given so that real parties in interest may appear and defend this action pursuant to Fed. R. Civ. P. 17.

## V.   STATEMENT OF FACTS

**A.      ABOUT HARRY CULLIPHER**

12. Harry Cullipher was born on March 30, 1941.

13. At the time of the events giving rise to this lawsuit Mr. Cullipher had been diagnosed with dementia however, he still maintained an active lifestyle for someone his age and enjoying the lifestyle and activities offered at the Sun City senior living community in Georgetown Texas.

14. Mr. Cullipher has been in a long-term relationship with Nancy Greathouse and considers herself the common law wife of Mr. Cullipher.

15. When Mr. Cullipher is an incapacitated person with dementia, Nancy Greathouse has

been appointed by the Court in Williamson County Texas as the Guardian Of Mr. Cullipher's person and the person with power to make medical decisions on his behalf.

16. On or about October 17, 2017 Mr. Cullipher suffered a fall and went to St. David's hospital to seek treatment for the resulting injuries.  While at St. David's it was determined that a residential rehabilitation facility would be best suited to provide Mr. Cullipher with continuing care and therapy after his discharge from St. David's.   Upon his discharge Mr. Cullipher was referred to Estrella Oaks Rehabilitation and Care Center and admitted into their care on or about 10/25/17. On or about November 5, 2017 Mr. Cullipher was discharged from Estrella Oaks. and went to the Baylor Scott and White hospital in Round Rock.

17. On or about November 6, 2017 Nancy Greathouse, after noticing a decline in Mr. Cullipher's condition and, that he was suffering with a fever, took him to the Emergency Room at Baylor Scott and White hospital in Round Rock. The doctors at Baylor Scott and White immediately noted that since his discharge from St. David's Mr. Cullipher's condition had dramatically changed and his condition had worsened.   Furthermore, Mr. Cullipher was found to be suffering for Sepsis and showed signs of skin deterioration from the onset of a bedsores.

## B.       ABOUT ESTRELLA OAKS REHABILITATION AND CARE CENTER

18. On the internet, Estrella Oaks Rehabilitation and Care Center is listed as a for profit Texas Corporation that runs a Medicare Certified nursing home with One Hundred and Forty-Two federally certified beds.

19. In their Admission Agreement For Care Estrella Oaks agrees that they will provide nursing, personal, and custodial care to their residents.

20. Over the last three years the Estrella Oaks Rehabilitation and Care Center has been inspected by Department of Health and Human Services Centers for Medicare and

Medicaid Services.

21. The inspections found the following violations by Estrella Oaks: failure to provide a right to privacy during personal care, inadequate amount of staff, failure to provide maintenance services necessary to maintain a safe, orderly and comfortable interior, failure to follow food and safety requirements, failure to keep all essential equipment working safely, failure to prepare and provide food by proper methods and with nutritive value, failure to provide warm water to residents with showers in their rooms, failure to provide appropriate care to residents who are continent or incontinent, failure to procure, distribute and serve food in accordance with professional standards such as having dented cans & expired food in the storage room. These are just a few of the observations and reviews in these reports.   On a severity scale, over the course of six different visits, the range was D to F (the lowest score possible), on five of the six.   In or about April of 2018 the Federal Government fined the facility $23,400 for violations of the Medicare regulations. In addition, there are many reviews of this facility giving them a rating of one or two stars out of five (the highest rating).

## C.      THE APPLICABLE SECTION 504 REGULATIONS

22. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 addresses the duty of health care agencies like Estrella Oaks, that receive federal monies, to assure their clients are free from discrimination based upon disability. Said somewhat differently, such agencies must make reasonable accommodations to a client so the person can receive services commensurate with their disabling conditions; *see also* 34 C.F.R. §104.1 [Purpose]; §104.2 [Application];  §104.3  [Definitions];  §104.4  [Discrimination  Prohibited];  §104.51 [Application- to programs accepting federal monies] and most importantly §104.52 [Health, Welfare And Other Social Services].

23. These  regulations  at  Title  34—Education;  CHAPTER  I—OFFICE  FOR  CIVIL

RIGHTS, DEPARTMENT OF EDUCATION; PART 104—NONDISCRIMINATION ON THE BASIS OF HANDICAP IN PROGRAMS OR ACTIVITIES RECEIVING FEDERAL FINANCIAL ASSISTANCE; Subpart F—Health, Welfare, and Social Services, Section 104.52, speak to Estrella Oak's duties and states:

    a. General. In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap:

(1)    *Deny* a qualified handicapped person these benefits or services;

(2)    Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons;

(3)    Provide a qualified handicapped person with benefits or services that are *not as effective* [emphasis added] as the benefits or services provided to others;

(4)    Provide benefits or services in a manner *that limits or has the effect of limiting the participation* (emphasis added) of qualified handicapped persons; or

(5)    Provide different or separate benefits or services to handicapped persons except where necessary to provide qualified handicapped persons with benefits and services that are as effective as those provided to others.

    b. Notice. A recipient that provides notice concerning benefits or services or written material concerning waivers of rights or consent to treatment shall take such steps as are necessary to ensure that qualified handicapped persons, including those with impaired sensory or speaking skills, are not denied effective notice because of their handicap.

    c. Emergency treatment for the hearing impaired. A recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care.

    d. Auxiliary aids. (1) A recipient to which this subpart applies that employs fifteen

or more persons shall provide appropriate auxiliary aids to persons with impaired

sensory, manual, or speaking skills, where necessary to afford such persons an *equal*

*opportunity to benefit* (emphasis added) from the service in question.

(6)     The Assistant Secretary may require recipients with fewer than fifteen employees

to provide auxiliary aids where the provision of aids would not significantly impair

the ability of the recipient to provide its benefits or services.

(7)     For the purpose of this paragraph, auxiliary aids may include brailed and taped

material, interpreters, and other aids for persons with impaired hearing or vision.

24.   Defendant Estrella Oaks receives federal monies, including but not limited to

reimbursements from the Medicare and Medicaid payments requiring them to follow the

requisites of the Rehab Act. In addition, the duty to follow the requisites of the Rehab

Act is a licensing requirement in Texas.

## D.   THE DUTIES OF AN ENTITY LICENSED TO PROVIDE INPATIENT HEALTH SERVICES

25.   The Texas Department of Aging & Disability Services ("DADS") licenses, certifies and

surveys home and community support services ("HCSSA") for compliance with state and

federal laws and regulations. Through these regulatory activities, DADS protect citizens

receiving home health services. In order for a business to be licensed and provide home

health services to Texas, the entity must enroll in the Texas Medicaid Program, a program

that received federal funding.

26.   Chapter 142 of the Texas Health & Safety Code provides DADS with the authority to

adopt minimum standards that a person or entity must meet in order to be licensed as a

HCSSA and qualified to provide certain home health services.

27.   DADS has promulgated a number of rules 40 Texas Administrative Code ("T.A.C") at

Chapter 97, delineating various licensure requirements. It notes that a licensed entity, in

receiving payments, whether pursuant to Medicaid at Title XIX of the Social Security

Act ("SSA") or Medicare at Title XVIII of the SSA, will also have to satisfy related federal laws, rules and standards of care, also noted at Title 42 of the Code of Federal Regulations ("C.F.R."), Part 484.

28. As an agency accepting federal monies, it must also follow, among other things, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and the Texas Nurse Practices Act and Texas Nursing Board rules and regulations promulgated thereunder.

29. In addition, Mr. Cullipher has a number of important patient and consumer rights as a recipient of in patient health services, pursuant to Chapter 48 of the Texas Human Resources Code; *see also* 40 T.A.C. §97.282 [Patient Rights](f)(5) [right to be treated with consideration, respect and full recognition of the client's individuality and personal needs] and (f)(6)[right to be free from abuse, neglect and exploitation]. A violation of such rights provides Mr. Cullipher a private cause of action under state law as well, pursuant to Texas Health & Safety Code §121.004.

## E.   HARRY CULLIPHER'S HOSPITALIZATION

30. On or around October 17, 2017 Mr. Cullipher suffered a fall.

31. To seek treatment falling his fall Mr. Cullipher was admitted as a patient at St. David's Hospital in Georgetown Texas.

32. Upon being admitted to St. David's Mr. Cullipher was given a battery of tests and medical procedures including, but not limited to blood work, x-rays, MRIs, and, a lumbar puncture.

33. The MRI on Mr. Cullipher's hip did not reveal a fracture and the only bruising, muscle strains, and deteriorations consistent with a person of his age.

34. On or about October 25, 2017 Mr. Cullipher was discharged to a post-acute care placement at Estrella Oaks to help him recover from his fall so he could properly heal.

*Plaintiffs' First Original Complaint and Jury Demand*

35. Unfortunately, Mr. Cullipher did not heal and his condition did not improve at Estrella Oaks, the person that was admitted there on or about October 25, 2017 is a much different and healthier person then the person that was discharged just ten days later on or about November 6, 2017.

36. Upon information and belief Plaintiffs allege were negligent in their treatment of Mr. Cullipher.

37. Upon information and belief Plaintiffs allege that Defendants were negligent in their hiring, training, and supervision of the staff.

38. Upon information and belief Plaintiffs allege that Defendants failed to employ the proper number of staff at their residential health facility. Plaintiffs further allege upon information and belief that this is done as a conscience decision by Defendants to save them money.

**F.     THE INCIDENT GIVING RISE TO THIS LAWSUIT**

39. Estrella Oaks has a contract with the State of Texas to provide specific type of services to Mr. Cullipher. They failed to do so. Mr. Cullipher was a beneficiary of such contractual agreement and is thus able to bring a cause of action against Estrella Oaks and accordingly.

40. Plaintiffs allege based on information and belief that while in the care of Estrella Oaks Mr. Cullipher treatment did not meet the standard of care of a medical services provider.

41. During his stay at Estrella Oaks the staff made medication errors resulting in Mr. Cullipher suffering an overdose of medication.

42. Estrella Oaks failed to diagnose or treat medical afflictions affecting the patient.

43. Estrella Oaks fail to attend to, render care to, and timely rotate Mr. Cullipher causing him bedsores.

44. Estrella Oaks failed to provide proper hydration and nourishment to Mr. Cullipher while he was in their care.

45. The Staff at Estrella Oaks were dishonest, bullying, retaliatory, as well as, mentally and physically abusive towards Mr. Cullipher and Nancy Greathouse.

46. Estrella Oaks failed to conduct an intake process upon the admission of Mr. Cullipher and did not provide Nancy Greathouse with a treatment plan until the day Mr. Cullipher was discharged.

47. Estrella Oaks acted to restrict access to the Mr. Cullipher by outside medical professionals who had been caring for Mr. Cullipher.

48. Estrella Oaks failed to recognize diagnose, and, treat Mr. Cullipher for a stroke he had while under their care.

49. Estrella Oaks failed to recognize, diagnose, and, treat Mr. Cullipher for Shingles he contracted while in their care.

50. Estrella Oaks failed to reposition the patient regularly thus, failing to prevent, recognize, diagnose, and, treat the bedsores that occurred while Mr. Cullipher was in their care.

51. Estrella Oaks was aggressive, and negligent when moving the Mr. Cullipher with a lift from his bed to his chair causing Mr. Cullipher to break his nose

52. The cleanliness of the rooms and the overall facility at Estrella Oaks was severely lacking and not up to customs and standards of the profession in which they operate.

53. Estrella Oaks often did not have clean bedding, gowns and other supplies necessary for the sanitary care of a medical patient.

54. Estrella Oaks failed to timely remove soiled bed linens, and diapers from Mr. Cullipher's room.

## VI. VIOLATION OF THE REHABILITATION ACT OF 1973

55.  Plaintiffs incorporate and re-allege the above-referenced allegations as though set forth at length herein. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

56.  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that any program or activity receiving Federal financial assistance may not discriminate against an otherwise qualified individual with a disability. Programs or activities covered by Section 504 include corporations or private organizations principally engaged in the business of providing healthcare, 29 U.S.C. §794(b)(3). Under the ADA Amendment's Act, the definition of a disability for purposes of the Rehabilitation Act of 1973 conforms to the definitions of disability under the ADA, 29 U.S.C. § 705(20)(B).

57.  The Defendant is a corporation which is principally engaged in the business of healthcare as defined by 29 U.S.C. §794, receives federal monies and as such, may not discriminate against a person because of their disability who is protected under Section 504 law and regulations.

58.  Mr. Cullipher. is a qualified individual with a disability.

59.  The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 by the Defendant against Mr. Cullipher as discrimination based upon disability. Specifically, that Mr. Cullipher did not receive the proper accommodations and modifications to his treatment plan by the Defendant Estrella Oaks to allow for him to heal properly.

60.  The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794; *see* 34 C.F.R. §104.52(a)(1) in that Defendant did *deny* Mr. Cullipher the benefits and services noted above.

61. The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794; *see* 34 C.F.R. §104.52(a)(3) in that Defendant did not provide Mr. Cullipher. with benefits or services that were *effective.*

62. The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794; *see* 34 C.F.R. §104.52(a)(4) in that Defendant's omissions, negligent acts, and, failures and refusals *limited Mr. Cullipher's (full) participation* and benefit from the programs offered by Defendant.

63. The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794; 34 C.F.R. §104.52(a)(5) in that Defendant did provide different or separate benefits or services to Mr. Cullipher that were not as effective as those provided to others.

64. The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794; 34 C.F.R. §104.52(d) in that Defendant did not provide Mr. Cullipher Auxiliary aids that afforded him an *equal opportunity to benefit* from services.

65. The facts as previously described demonstrate discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794 and the regulations promulgated thereunder.

66. Such acts, omissions and failures by the Defendant caused injuries to Mr. Cullipher.

## VII.  NEGLIGENCE BY ESTRELLA OAKS REHABILITATION AND CARE CENTER

### A.  MEDICAL NEGLIGENCE

67. Plaintiffs incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth. Plaintiffs allege that this Defendant was negligent in their

capacity as a health care provider when providing health care to Mr. Cullipher, such failure

a violation of the relevant professional standards for a reasonable and prudent home health

services operating in Williamson County, Texas.

## B.   NEGLIGENCE PER SE

68. In addition, and in the alternative to the above, Plaintiffs allege that the Defendant, acting

by and through its directors, officers, employees and agents, and contract services, violated

the State Law of Texas, as contemplated by rules and regulations promulgated thereunder,

and considered "Negligence Per Se" creating a private cause of action thereby.

## VIII.   DECEPTIVE TRADE PRACTICES

69. In addition and in the alternative to the above, Plaintiffs set forth this claim for that the

Defendant engaged in deceptive business practice in regard to the services provided by

this Defendant as contemplated by the Texas Deceptive Trade Practices Act, Chapter 17,

Texas Business & Commerce Code ("DTPA").

70. Mr. Cullipher was a consumer.

71. This Defendants can be sued under the DTPA.

72. The Defendants advertised that they provided a specific type of program and they did not

provide such a program.

73. The Defendants advertised that they provided a specific type of services, but they did not

provide such services.

74. The Defendant's actions were a producing cause of Plaintiff's damages.

## IX. BREACH OF CONTRACT

75. As noted above Estrella Oaks had a contract with the State of Texas to provide specific

type of services to consumers like Mr. Cullipher.

76. They failed to follow relevant state law, state rules, Medicaid standards and Medicare

standards, all as required by their contract with the State of Texas.

77. Also as noted above, Mr. Cullipher was a beneficiary of such contractual agreement and

as such is able to bring a cause of action against Estrella Oaks for breach of contract claims accordingly.

## X.    VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

78. Plaintiffs allege that the Defendants, acted in concert with each and violated the RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §§ 1961–1968, by the conduct and enterprise noted above, which was to use the monies generated by and through Medicare and other public and private insurance companies and provide as little care to patients, like Plaintiff, as possible.

## XI.    CIVIL CONSPIRACY

79. The Defendants, named and un-named all met with each other for an unlawful purpose or in addition and in the alternative, a lawful purpose but used unlawful means, and had a meeting of the minds on these unlawful objectives, committed an overt act in furtherance of such objectives and Plaintiff suffered an injury as a proximate result of such wrongful act.

80. The reason for the conspiracy between the Defendants was to increase profits for both the corporate entity, THI, LLC ("THI") and the local affiliate- Estrella Oaks. In order to effectuate the conspiracy, Defendant THI provided financial, administrative, and technical support as well as supervision and staff training on how local staff at the Estrella Oaks facility could increase admissions and lengths of stay for potential patients, to the financial benefit of all Defendants, and to the detriment of patients, like Plaintiff in this cause.

81. Plaintiff alleges that the Defendant Estrella Oaks and the Defendant THI, acting in concert with each other, and with intent to commit civil conspiracy, and by and through its directors, officers, employees and agents, and contract services, willfully conspired to admit Plaintiff without following professional standards set forth by Section 504 of the Rehabilitation Act of 1973, Medicare, the Texas Health & Safety Code and common

law.

82. As a direct and proximate result of Defendants' Conspiracy, Plaintiff suffered injuries.

## XII.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83. The Defendants engaged in conduct and made statements, which caused Plaintiffs severe mental distress and anguish.

84. Such actions and statements were done and made intentionally to cause them emotional distress and anguish, or, alternatively, were made recklessly and with an entire want of care.

85. As a direct and proximate result of Defendants actions and statements, Plaintiff has endured shame, embarrassment, humiliation and mental anguish in an amount within the jurisdictional limits of this Court.

86. Defendant's intentional infliction of emotional distress upon Plaintiffs was done intentionally, with an entire want of care, and with conscious indifference to the rights and welfare of Plaintiff.

## XIII.   PROXIMATE CAUSE

87. Plaintiffs incorporate by reference all allegations in the above-related paragraphs with the same force and effect as if herein set forth.  Each and every, all and singular of the foregoing acts and omissions, on the part of the Defendants taken separately and/or collectively, or jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIV.   RATIFICATION AND RESPONDEAT SUPERIOR

88. The Defendant ratified the acts, omissions and customs of all their  administrators, personnel, professional and non-professional and staff. As a result, this Defendant is responsible for the acts and omissions of all those persons thereby. This Defendant is further liable for the  negligent acts and omissions of its employees, contractors and

agents, under the doctrine of Respondeat Superior.

## XV. DAMAGES

89. Plaintiffs incorporate by reference all of the above-related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

90. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following for Mr. Cullipher:

91. Physical pain and suffering for Mr. Cullipher;

92. Past Mental anguish for Mr. Cullipher and Nancy Greathouse;

93. Past medical expenses for Mr. Cullipher;

94. Loss of Enjoyment for Mr. Cullipher;

95. Future mental health costs to Mr. Cullipher and Nancy Greathouse

96. Out of pocket costs of Mr. Cullipher's Guardian over his person.

97. As a direct and proximate result of the Defendants' conduct, Nancy Greathouse has suffered injuries and damages, which she may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to loss of income.

98. By reason of the above, the subject of this lawsuit, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## XVI. EXEMPLARY DAMAGES

99. Plaintiffs incorporate by reference all of the above-related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

100. Further, that the above-described conduct of each and any Defendant was willful and malicious as such failures were a gross deviation from professional standards of care.

101. As a result, the Plaintiffs are entitled to recover exemplary damages to deter such cruel

and improper conduct in the future. Defendant's actions caused Mr. Cullipher, and by extension his family, suffering of immeasurable dimensions, as well as significant expenses, including those enumerated above, and attorneys' fees incurred in the investigation and prosecution of this action. Accordingly, Plaintiffs requests that exemplary damages be awarded against Defendant, in a sum sufficient to deter similar future actions by them and those similarly situated.

## XVII. EXEMPLARY DAMAGES

102. It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff are entitled to an award of attorney fees and costs pursuant to the Rehabilitation Act and 42 U.S.C. §2000d et seq., the Texas Deceptive Trade Practices Act and Chapter 38 of the Texas Civil Practices & Remedies Code.

## XVIII. DEMAND FOR A JURY TRIAL

103. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable of right by a jury pursuant to his rights as guaranteed by the Seventh Amendment to the United States Constitution and by corresponding provisions of state law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray in the manner and particulars noted above, and in an amount sufficient to fully compensate the defendants for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to the Rehabilitation Act and the Texas Deceptive Trade Practices Act, and with pre- and post-judgment interest, and court costs expended herein and for such other further relief as the Court may deem just and proper in law or in equity.

Respectfully submitted,

*/s/ Martin J. Cirkiel*

17

*Plaintiffs' First Original Complaint and Jury Demand*

Mr. Martin J. Cirkiel, Esq.
SBN 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]


Kenneth C. Perry, Esq.
State Bar No.: 24111081
Cirkiel & Associates, P.C
1901 E. Palm Valley
Blvd.
Round Rock, Texas
78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
Kenneth@cirkielaw.com [Email]

**ATTORNEYS FOR PLAINTIFFS**